**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:24-CV-00543-CHL**

**DECORA B. on behalf of B.H., a minor,[1]**                                    **Plaintiff,**

**v.**

**COMMISSIONER OF SOCIAL SECURITY,[2]**                                    **Defendant.**

**MEMORANDUM OPINION AND ORDER**

Before the Court is the Complaint filed by Plaintiff, Decora B., on behalf of B.H. ("Claimant"), a minor.[3]    Claimant seeks judicial review of the final decision of the Commissioner of Social Security ("the Commissioner").    (DN 1.)    Claimant and the Commissioner each filed a Fact and Law Summary and/or supporting brief.  (DNs 13, 14, 16.) Claimant did not file a reply, and his time to do so has expired.  (DN 12.)  The Parties have consented to the jurisdiction of a Magistrate Judge to enter judgment in this case with direct review by the Sixth Circuit Court of Appeals in the event an appeal is filed.  (DN 11.)  Therefore, this matter is ripe for review.

For the reasons set forth below, the final decision of the Commissioner is **REVERSED**, and this matter is **REMANDED**, pursuant to sentence four of 42 § U.S.C. 405(g), to the Commissioner to conduct additional proceedings to remedy the herein identified defects in the original proceedings.

---

[1] Pursuant to General Order 23-02, the Plaintiff in this case is identified and referenced solely by first name and last initial.

[2] As Frank Bisignano is now the Commissioner of Social Security, he is automatically substituted as the Defendant in this matter pursuant to Fed. R. Civ. P. 25(d).  The Clerk is directed to change the case caption to reflect the substitution.

[3] The Court will use the term "Claimant" to refer to B.H. on whose behalf Plaintiff Decora B. brough the instant application for benefits.

## I.    BACKGROUND

On August 28, 2022, Decora B. filed an application for supplemental security income under Title XVI ("SSI") on Claimant's behalf.  (R. at 11, 107, 114-16, 215-23.)  The application alleged disability beginning on November 7, 2014, due to Claimant's Wolff-Parkinson-White syndrome, anxiety, depression, suicidal thoughts, asthma, and reading and learning delay.  (*Id.* at 107, 116, 246.)  Claimant's application was denied initially and again on reconsideration.  (*Id.* at 124-28, 137-40.)

At Claimant's request, Administrative Law Judge ("ALJ") Stacey Foster ("the ALJ") conducted a hearing on Claimant's applications on March 22, 2024.  (*Id.* at 78-88, 141.)  Claimant and his mother, Decora B., attended the hearing with Claimant's attorney.  (*Id.* at 80.)  During the brief hearing, Claimant testified that he was in the sixth grade and home schooled.  (*Id.* at 81.)  Art is his favorite subject in school, and math is his least favorite.  (*Id.* at 82.)  He likes "[t]o play on [his] game" but does not do any sports outside.  (*Id.*)  He thinks he is different from other kids because he has a heart condition.  (*Id.* at 82-83.)  His mother testified that Claimant transitioned to home schooling because he missed thirty to thirty-five days of school due to his condition and being in the hospital.  (*Id.*at 85.)  Claimant's grades were poor (Ds and Us), and he cried every day not to go to school.  (*Id.* at 85-86.)  He requires assistance from his teachers to stay on track.  (*Id.* at 86.)  Claimant doesn't do any activities because he is embarrassed and afraid that kids are going to make fun of him.  (*Id.* at 87.)  He tells his mother that he is afraid to leave the house because he is afraid he'll have an attack.  (*Id.*)

The ALJ issued an unfavorable decision on June 18, 2024.  (*Id.* at 8-25.)  Applying the three-step sequential evaluation process promulgated by the Commissioner to determine whether a child is disabled, the ALJ made the following findings.  First, the Claimant had not engaged in

substantial gainful activity since August 28, 2022, the application date. (*Id.* at 12.)  Second, Claimant had the following severe impairments: paroxysmal supraventricular tachycardia, pre-excitation syndrome, mild intermittent asthma, mood and anxiety disorders, borderline intellectual functioning, and a learning disorder. (*Id.*)  Third, Claimant did not have an impairment or combination of impairments that met, medically equaled, or functionally equaled any of the listed impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1. (*Id.* at 13, 16.)  The ALJ concluded that Claimant was not under a disability since August 28, 2022, the date the application was filed. (*Id.* at 21.)

Claimant subsequently requested an appeal to the Appeals Council, which denied his request for review on August 7, 2024. (*Id.* at 1-7, 212-14, 381-84.)  At that point, the ALJ's decision became the final decision of the Commissioner. *See* 20 C.F.R. § 422.210(a) (2025); *see also* 42 U.S.C. § 405(h) (discussing finality of the Commissioner's decision).  Pursuant to 20 C.F.R. § 422.210(c), Claimant is presumed to have received that decision five days later.  20 C.F.R. § 422.210(c).  Accordingly, Claimant timely filed this action on September 25, 2024. (DN 1.)

## II.    DISCUSSION

The Social Security Act authorizes payments of SSI to persons with disabilities. *See* 42 U.S.C. §§ 1381-1383f.  An individual under age eighteen is considered "disabled" if he or she "has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] months"  42 U.S.C. § 1382c(a)(3)(C)(i); *see also* 20 C.F.R. § 416.906 (2025).

**A.      Standard of Review**

The Court may review the final decision of the Commissioner but that review is limited to whether the Commissioner's findings are supported by "substantial evidence" and whether the Commissioner applied the correct legal standards.  42 U.S.C. § 405(g); *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997).  "Substantial evidence" means "more than a mere scintilla"; it means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  The Court must "affirm the Commissioner's decision if it is based on substantial evidence, even if substantial evidence would also have supported the opposite conclusion."  *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 374 (6th Cir. 2013); *see Smith v. Sec'y of Health & Hum. Servs.*, 893 F.2d 106, 108 (6th Cir. 1989) (holding that if the Court determines the ALJ's decision is supported by substantial evidence, the court "may not even inquire whether the record could support a decision the other way").  However, "failure to follow agency rules and regulations" constitutes lack of substantial evidence, even where the Commissioner's findings can otherwise be justified by evidence in the record.  *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011).

**B.      Three-Step Sequential Evaluation Process for Evaluating Disability
in Children**

The Commissioner has promulgated regulations that set forth a three-step sequential evaluation process that an ALJ must follow in evaluating whether a child is disabled for purposes of SSI benefits.  20 C.F.R. § 416.924 (2025).  In summary, the evaluation process proceeds as follows:

(1)      Is the child involved in substantial gainful activity?  If the answer is "yes," the child is not disabled.  If the answer is "no," proceed to the next step.

(2)     Does the child have an impairment or combination of impairments that is severe?  If the answer is "no," the child is not disabled.  If the answer is "yes," proceed to the next step.

(3)     Does the child have an impairment or combination of impairments that meets, medically equals, or functionally equals the criteria of a listed impairment within 20 C.F.R. Part 404, Subpart P, Appendix 1 and satisfies the duration requirement?[4]  If the answer is "yes," the child is disabled.  If the answer is "no," the child is not disabled.

20 C.F.R. § 416.924(a).

### C.     Claimant's Contentions

Claimant argued that the ALJ erred in two ways. First, the Claimant argued that the ALJ erred in her analysis of the opinion of consultative examiner Jennifer Fishkoff, Psy.D., ("Dr. Fishkoff"). (DN 13, at PageID # 1050, 1055, 1057-63; DN 14, at PageID # 1070-71.)  Second, the Claimant argued that the ALJ's finding that Claimant had less than marked limitations in the domain of health and physical well-being was not supported by substantial evidence.  (DN 13, at PageID # 1050, 1055, 1063-67; DN 14, at PageID # 1071-72.)  Because the Court concludes remand is appropriate as to Claimant's first argument, it does not reach the second.

Claimant argued that the ALJ's analysis of Dr. Fishkoff's opinion did not comport with 20 C.F.R. § 416.920c as she did not properly consider both the supportability and consistency factors and explain how she considered them in her opinion as required.  (DN 13, at PageID # 1050, 1055, 1057-63; DN 14, at PageID # 1070-71.)  The applicable regulations set forth specific rules an ALJ must follow with regard to opinion evidence.  Pursuant to 20 C.F.R. § 416.920c, an ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any

---

[4] To be considered, an impairment must be expected to result in death or have lasted/be expected to last for a continuous period of at least twelve months.  20 C.F.R. § 416.909 (2025).

medical opinion(s)" in the record regardless of its source.[5]    20 C.F.R. § 416.920c(a) (2025). Instead, an ALJ will evaluate the "persuasiveness" of a medical opinion by reference to the five factors listed in the regulation: supportability, consistency, relationship with the claimant, specialization, and other factors.  20 C.F.R. § 416.920c(a), (c).  The regulations provide that the two most important factors are supportability and consistency and that an ALJ is required to "explain how [he or she] considered the supportability and consistency factors for a medical source's medical opinions."  20 C.F.R. § 416.920c(a), (b)(2).  An ALJ is not required to explicitly discuss how he or she weighed the other regulatory factors of relationship with the claimant, specialization, and other factors.  20 C.F.R. § 416.920c(b)(1)-(2).

The Sixth Circuit has not elucidated a specific standard to determine whether an ALJ sufficiently complied with the requirement to "articulate how [he or she] considered the medical opinions" and "explain how [he or she] considered the supportability and consistency factors" under the new regulations.  20 C.F.R. § 416.920c(b).  *But see Adams v. Comm'r of Soc. Sec.*, No. 23-3284, 2023 WL 6366106, at *2 (6th Cir. Sept. 28, 2023) (noting that the new regulations "substantially reduce[ ] the ALJ's obligation to explain the basis for his or her assessment of medical opinions"); *Deaner v. Comm'r of Soc. Sec.*, 840 F. App'x 813, 822-23 (6th Cir. 2020) (White, J. dissenting) (applying the new regulations and finding that "[t]he ALJ did not clearly analyze the supportability and consistency of the state consultants' assessments, as compared to other evidence in the record which supported [the plaintiff]'s claims"). However, district courts applying the new regulations within this circuit consistently apply the articulation requirement literally.  *See, e.g.*, *Hardy v. Comm'r of Soc. Sec.*, 554 F. Supp. 3d 900, 909 (E.D. Mich. 2021) ("The administrative adjudicator has the obligation in the first instance to show his or her work,

___

[5] This language indicates that the new regulations have done away with the controlling weight and other old rules regarding the weight to be ascribed to medical opinions.  20 C.F.R. § 416.927(c)(2) (2025).

i.e., to explain in detail *how the factors actually were applied* in each case, to each medical source. Resorting to boilerplate language to support a finding of unpersuasiveness does not satisfy that obligation." (emphasis in original)); *White v. Comm'r of Soc. Sec.*, No. 1:20-CV-00588-JDG, 2021 WL 858662, at *21 (N.D. Ohio Mar. 8, 2021) ("Although the new standards are less stringent in their requirements for the treatment of medical opinions, they still require that the ALJ provide a coherent explanation of his reasoning."); *Lester v. Saul*, No. 5:20-CV-01364, 2020 WL 8093313, at *14 (N.D. Ohio Dec. 11, 2020) (finding that "the [new] regulations do require that the ALJ clearly explain his consideration of the opinions and identify the evidence supporting his conclusions"), *report and recommendation adopted sub nom. Lester v. Comm'r of Soc. Sec.*, No. 5:20-CV-1364, 2021 WL 119287, at *1 (N.D. Ohio Jan. 13, 2021).

Here, as part of her determination that Claimant's impairments did not meet, medically equal, or functionally equal the severity of a listed impairment within 20 C.F.R. Part 404, Subpart P, Appendix 1, the ALJ considered the opinion of consultative examiner Dr. Fishkoff. (R. at 13-21.) Across her numerical findings four and five, the ALJ cited sparingly to Dr. Fishkoff's report. She cited to the objective testing administered by Dr. Fishkoff that revealed Claimant had "an IQ of seventy-nine[,] which is in the upper limit of borderline intellectual functioning," as well as "[a] wide range achievement test [that] demonstrated that the [C]laimant read at well below grade level." (*Id.* at 15, 18.) She also emphasized that Claimant was "able to focus to play video games for an extended period of time," citing Dr. Fishkoff's report. (*Id.* at 16, 19.) She generalized, "The [C]laimant appears capable of engaging in routine day to day activities inside the household based upon his description of a normal day to the consultative examiner." (*Id.*) At the end of her functional equivalence determination, the ALJ then assessed the overall persuasiveness of Dr. Fishkoff's opinion as follows:

7

> I have also considered the opinion of the consult[at]ive psychological examiner Dr. Jennifer Fishkoff. (Ex. B6F). She opined that the claimant has severe impairments in his ability to sustain attention, tolerate frustration, conform to social standards, and understand, retain, and follow instructions. The opinion related to the ability to retain understand, retain [*sic*], and follow instructions is persuasive. It is supported by the psychometric testing indicating a reduced IQ. It is also consistent with the observations of the claimant's teacher. However, the remainder of the opinions are unpersuasive. Support is based primarily on the self-reports of the claimant and his mother. They are also contradicted by the observations of the claimant's teacher which do not indicate such high levels of impairment. As these are based on more long-term observation, they are more persuasive evidence.

(*Id.* at 20-21.)   Claimant argued that this did not constitute an adequate analysis of either supportability or consistency pursuant to 20 C.F.R. § 416.920c.  (DN 13, at PageID # 1050, 1055, 1057-63; DN 14, at PageID # 1070-71.)

20 C.F.R. § 416.920c(c)(1) defines supportability and explains that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s)[,] . . . the more persuasive the medical opinions . . . will be."  20 C.F.R. § 416.920c(c)(1).  Here, the ALJ concluded that Dr. Fishkoff's opinion regarding Claimant's ability to retain, understand, and follow instructions was persuasive because it was supported by Dr. Fishkoff's IQ testing but found that her remaining opinions were unpersuasive because they were based primarily on the self-reports of the Claimant and his mother.  (R. at 20-21.)  Claimant argued that the latter was an improper basis for the ALJ to discount Dr. Fishkoff's opinions citing *Flory v. Comm'r of Soc. Sec.*, 477 F. Supp. 3d 672, 678 (S.D. Ohio 2020), and *Thompson v. Berryhill*, No. 4:18-CV-133-FL, 2019 WL 2980030, at *12 (E.D.N.C. Apr. 22, 2019), *report and recommendation adopted sub nom. Thompson v. Saul*, No. 4:18-CV-133-FL, 2019 WL 2932736, at *1 (E.D.N.C. July 8, 2019).  (DN 13, at PageID # 1061-62.)  Specifically, Claimant argued that "it is improper for an ALJ to discount a medical opinion because it is allegedly based on a claimant's subjective reports without some evidence that the medical source

8

relied excessively on those subjective reports—particularly in cases involving mental impairments." (*Id.* at 1062.)  In *Flory*, the Southern District of Ohio explained that a psychiatrist or mental health professional's report "should not be rejected simply because of . . . the absence of substantial documentation." *Flory*, 477 F. Supp. 3d at 678 (citing *Blankenship v. Bowen*, 874 F.2d 1116, 1121 (6th Cir. 1989)).  And in *Thompson*, the United States District Court for the Eastern District of North Carolina echoed a similar sentiment, finding that the ALJ's rejection of an opinion on grounds that it "relied heavily" on a claimant's subjective statements was deficient.  *Thompson*, 2019 WL 2980030, at * 12 (quoting in part *Hare v. Astrue*, No. 7:08-cv-36-FL, 2009 WL 873993, at *3 (E.D.N.C. Mar. 24, 2009)) ("In general, a psychiatrist or psychologist has more leeway in relying on the subjective statements of a patient than a provider dealing with physical conditions. As this court has observed, '. . . a psychiatrist [or psychologist] must base his or her findings on the subjective reports of a patient. Psychology and psychiatry necessarily rely on such subjective reports because the types of disorders they deal with are not usually susceptible to direct physical observation as in other medical arenas.' ").  The Sixth Circuit has expressed similar sentiments.  In *Blankenship v. Bowen*, the Sixth Circuit found that it was improper for an ALJ to have discounted a medical opinion because the psychiatrist "examined [claimant] on only one occasion and there was not present a clear diagnostic picture." *Blankenship*, 874 F.2d at 1121.  Quoting a case from the United States Court of Appeals for the District of Columbia, the Sixth Circuit explained, "The report of a psychiatrist should not be rejected simply because of the relative imprecision of the psychiatric methodology or the absence of substantial documentation, unless there are other reasons to question the diagnostic techniques." *Id.* (quoting *Poulin v. Bowen*, 817 F.2d 865, 873-74 (D.C. Cir. 1987)).  However, as the Sixth Circuit has subsequently recognized "[r]egardless of any inherent subjectivity in the

9

field of psychiatry, a doctor cannot simply report what his patient says and re-package it as an opinion." *Kepke v. Comm'r of Soc. Sec.*, 636 F. App'x 625, 629 (6th Cir. 2016).

Here, the ALJ found that support for Dr. Fishkoff's opinion was based "primarily on the self-reports of the claimant and his mother." (R. at 21.) On balance, the Court finds this statement alone to be an insufficient articulation of the supportability factor. While the Commissioner's brief discusses several ways in which she believed Dr. Fishkoff's opinion was not supported by Dr. Fishkoff's own findings, the ALJ's decision provides no basis on which the Court can conclude the ALJ shared the Commissioner's opinion. (DN 16, at PageID # 1081-83.) This is problematic. Unlike other cases where an ALJ provided a general summary of a provider or examiner's opinion elsewhere in his or her decision that illuminated his or her persuasiveness findings, the ALJ in this case did not provide such a summary. The ALJ did cite to a few findings from Dr. Fishkoff's opinion in her larger analysis but other than her citation to Claimant's IQ testing results, the ALJ herself largely cited to Claimant's own reports of his activities to Dr. Fishkoff. (R. at 16, 19 (citing Dr. Fishkoff's report in support of statements that Claimant was "able to focus to play video games for an extended period of time and that "[t]he [C]laimant appears capable of engaging in routine day to day activities inside the household based upon his description of a normal day to the consultative examiner").) Without this context, the Court is left with nothing to substantiate the ALJ's persuasiveness analysis except her statement that Dr. Fishkoff's opinion was based "primarily" on Claimant's self-reports. Given the cases cited above regarding the unique nature of mental impairments, the Court finds "primarily" distinguishable from other qualifying words and phrases such as "heavily" and "over relied" because it does not—without additional analysis—allow the Court to distinguish between a case where the ALJ merely repacked a claimant's reports as an opinion and one where the ALJ

relied on a claimant's reports in conjunction with other appropriate considerations. *See Eva H. v. Comm'r of Soc. Sec.*, No. 3:22-CV-00505-CHL, 2023 WL 4188055, at *5 (W.D. Ky. June 26, 2023) (finding an ALJ's statement that the opinion "over-relied on Claimant's reports of her own symptoms and activities" supported because "the degree of limitation assessed . . . was at odds with some of the objective findings in [the] report"), *aff'd sub nom. Hopkins v. Comm'r of Soc. Sec.*, No. 23-5696, 2024 WL 3688302, at *1 (6th Cir. Apr. 9, 2024) (noting that the ALJ "reasonably found that [the] [examiner] [had] relied heavily on [claimant]'s subjective reports" where ALJ had also addressed other findings in report with which examiner's opinions conflicted). Nor is the same evident from the Court's over review of Dr. Fishkoff's opinion. (R. at 665-74.) Thus, the Court finds that the ALJ's supportability analysis did not comport with 20 C.F.R. § 416.920c and will remand this matter to the Commissioner for further proceedings.

To assist with the analysis upon remand, the Court observes that the ALJ's analysis of the consistency factor was appropriately detailed and compliant with 20 C.F.R. § 416.920c. 20 C.F.R. § 416.920c(c)(2) defines consistency and explains that "[t]he more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." 20 C.F.R. § 416.920c(c)(2). The ALJ found Dr. Fishkoff's opinion inconsistent with the observations of Claimant's teacher. (R. at 21.) Unlike Dr. Fishkoff's findings, the ALJ's decision cited in multiple places to Claimant's education records to provide context for her consistency analysis. (*Id.* at 16, 18-20.) Though Claimant argued that Claimant's teacher was not an acceptable medical source, he provided no authority to support that fact made the ALJ's reliance on the teacher's opinion improper. (DN 13, at PageID # 1062.) His position is inconsistent with the plain language of the regulation, which allows the ALJ to evaluate consistency by reference to the evidence from both medical

11

*and nonmedical* sources. Thus, the Court finds the ALJ's consistency analysis appropriately detailed and compliant with 20 C.F.R. § 416.920c.

Because the Court has found remand is appropriate as to the ALJ's consideration of the opinion evidence, the Court does not reach Claimant's argument regarding the ALJ's functional equivalence determination and his analysis of the domain of health and physical well-being.

## III.    ORDER

For the reasons set forth above, IT IS HEREBY ORDERED that the final decision of the Commissioner is **REVERSED** and that this matter is **REMANDED**, pursuant to sentence four of 42 § U.S.C. 405(g), to the Commissioner to conduct additional proceedings to remedy the above-identified defects in the original proceedings. A final judgment will be entered separately.

Colin H Lindsay, Magistrate Judge
United States District Court

cc:    Counsel of Record

March 25, 2026